# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**EDDIE JAMES SHORTY (# 26507)**                                                          **PLAINTIFF**

v.                                                                                             No. 4:07CV207-M-A

**KENTRELL LIDDELL, ET AL**                                                                 **DEFENDANTS**

## Memorandum Opinion

This matter comes before the court on the *pro se* prisoner complaint of Eddie James Shorty, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. Shorty claims that the defendants failed to provide him adequate medical care. Shorty has filed a motion for summary judgment, which, given its brevity, the court shall treat as a motion for judgment on the pleadings. In response, the defendant Thomas Lehman has moved for summary judgment, arguing that Shorty has actually received extensive medical treatment for his conditions. For the reasons set forth below, the defendant's motion for summary judgment shall be granted and the instant case dismissed.

## Factual Allegations

The plaintiff alleges that he has a history of high blood pressure, which has caused him to experience dizziness, headaches, weakness, and nausea. He was treated for these symptoms in 2002 when he was housed at the East Mississippi Correctional Facility. Shorty is currently receiving treatment for his condition; however, he is still experiencing headaches, nausea, and, occasionally, vomiting. He believes that the treatment he is receiving is inadequate. Shorty is receiving psychiatric care for the continuing pain, as prescribed by psychiatrist Dr. Kumar. On

one occasion, the nurse responsible for dispensing medications to Shorty did not provide all of the medications prescribed by the doctor.

## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Undisputed Material Facts**

Eddie James Shorty has a long history of schizophrenia and depression. *See* Medical Chronology[1], Exhibit A[2]; *see also,* February 18, 1993, Medical Record from Sacred Heart, Exhibit B. Upon being taken into the custody of the Mississippi Department of Corrections, Shorty complained that he had suffered from stomach problems and nausea for eight years and that none of the medications he had tried helped. *See* June 17, 1999, Medical Record, Exhibit C. In 1993, prior to his incarceration, Shorty had complained of "persistent nausea" when he presented at the Sacred Heart Medical Center for "nausea and difficulty eating." *See* Exhibit B.

---

[1] Shorty's medical records for the relevant period are voluminous, consisting of approximately 489 pages. The defendant produced a complete copy of Shorty's medical records to him the same day the defendant filed his motion for summary judgment. In the interest of ease of review, defendant Lehman submitted a medical chronology in lieu of the entire medical record under Federal Rule of Evidence 1006.

[2] The exhibits mentioned in the instant memorandum opinion refer to the exhibits attached to defendant Dr. Lehman's Cross-Motion for Summary Judgment.

Since Shorty began his incarceration in June of 1999, medical professionals have diagnosed and treated Shorty's illnesses *numerous* times. *See* Exhibit A. He has had access to medical care and has taken advantage of that access on a continuing basis. In particular, medical professionals have examined and treated Shorty *over fifty-seven times* regarding his complaints of persistent nausea, headaches, and stomach pain. *Id.* In 2002 Shorty was sent to Rush Hospital where numerous tests were performed at the prison's expense. *Id.* According to the Discharge Summary from Rush Hospital, Shorty was admitted with a diagnosis of nausea and vomiting of undetermined etiology. *See* Rush Hospital Discharge Summary, Exhibit D. Shorty underwent an abdominal ultrasound, a CT scan, and an EGD. *Id.* All of these tests were normal; however, the EGD showed that Plaintiff had "mild gastritis." *Id.* Shorty's blood pressure was high; therefore, he was prescribed Clonidine. *Id.* Shorty was also prescribed Protonix for his gastritis. *Id.* Shorty continued to receive these medications upon return to the prison, but he continued to complain. *See* Exhibit A Entries April 19, 2002 to January 15, 2003.

In August 2005 Shorty was transferred from the East Mississippi Correctional Facility to the Mississippi State Penitentiary. *See* 4:07CV150 Complaint at 3, Exhibit E. According to Shorty's Complaint, he was prescribed high blood pressure by Dr. Thomas Lehman in December of 2005. *See* 4:07CV207-M-A Complaint, Exhibit F. Shorty alleges that "since that time Shorty has been experiencing constant headaches, dizziness, body weaknesses and nausea going untreated did contribute[] to periodic vomiting." *See* Plaintiff's Complaint at 3-4. Shorty agrees that these are the "same identical symptoms" he was sent to Rush Hospital for in 2002. *Id.* According to Shorty's medical records, he was seen by Dr. Lehman on December 16, 2005, for high blood pressure, renal insufficiency, and for medication adjustments. *See* December 16,

2005, Medical Record, Bates Stamped No. 000009-12, Exh. G. Dr. Lehman admitted Shorty into the prison infirmary where he received numerous medications for his high blood pressure and renal insufficiency. *Id.* Shorty was discharged on December 22, 2005, after his blood pressure stabilized and his condition was "good." *Id.* He had a follow-up visit with Dr. Lehman on January 1, 2006, and had no complaints. *See* January 1, 2006, Medical Record, Bates Stamped No. 000062, Exh. H. Shorty filled out a Medical Request Form on January 31, 2006, complaining that his blood pressure medication was causing him to have headaches and nausea. *See* January 31, 2006, Medical Request Form, Exhibit I. Shorty was seen on February 13, 2006, and two of his medications were discontinued. *See* Exhibit A. Shorty was seen – or refused to be seen – several times between February 13, 2006, and May 11, 2006. *Id.* The first time he complained of nausea and vomiting while incarcerated at the Mississippi State Penitentiary was on June 5, 2006. *See* Exhibit A and June 5, 2006, Medical Services Request Form, Exhibit J. Shorty was prescribed Zantac, Atenolol and instructed to continue his blood pressure medications. *See* Exhibit A at June 8, 2006.

Shorty was seen again on July 5, 2006, for complaints of nausea, dizziness and headaches. *See* Exhibit A; *see also,* July 5, 2006, Medical Record, Bates Stamped No. 000067 Exhibit K. The doctor noted Shorty's long history of psychiatric issues and that he had been on antipsychotic medications. *Id.* Shorty attributed his nausea, dizziness, and headaches to his blood pressure medication; however, Shorty admitted that when he stopped his medications (for one month) his problems did not subside. *Id.* All of his medical requests were handled in the allotted time frame. *Id.* The doctor noted that "His complaints are with no obvious cause noted. He is hypertensive and noncompliant with meds. Compliance urged but he would not agree." *Id.*

Dr. Lehman saw Shorty again on November 2, 2006, and he complained of constant headaches, nausea, and high blood pressure. *See* Exhibit A; *See* November 2, 2006, Medical Record, Exh. L. Dr. Lehman explained why Shorty's medications were prescribed to him – and the importance of taking those medications. *Id.* Because Shorty was "chronically non-compliant" with taking his medications, he was referred to Dr. Bearry for evaluation. *Id.* Shorty has continued to receive treatment for his symptoms; however, there is no known etiology for Shorty's nausea and vomiting, and Dr. Lehman has provided Shorty continuing treatment for his complaints. In December of 2007, Shorty received a brain scan. *See* Exhibit A at December 4, 2007. There was "no evidence of acute process within the skull." *Id.*

**Denial of Medical Treatment**

Shorty seeks judgment on the pleadings because his headaches, nausea, and vomiting have been "inadequately treated." Unfortunately, none of the treatments the defendants have tried has provided Shorty the relief he seeks. This set of facts does not rise to the level of a constitutional claim for denial of medical treatment. In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable

under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

As documented in Dr. Lehman's motion for summary judgment, Shorty has received treatment over fifty-seven times for these symptoms. The medications are keeping his hypertension under control, and ceasing the medications has not provided relief from the headaches, nausea, and weakness. The prison doctors have repeatedly conducted diagnostic testing – including a brain scan – but have not found the cause of these symptoms. Shorty disagrees with his treatment; however, such disagreement does not rise to the level of a constitutional violation. For these reasons, Shorty's claims regarding denial of medical care shall be dismissed with prejudice.

### *Respondeat Superior*

Shorty has not alleged any personal involvement by Dr. Kentrell Liddell with the claims in his complaint. Indeed, the complaint only states that Dr. Liddell "is the medical director over

MSP medical staff [in] Unit 42 Prison Infirmary . . . ." Section 1983 liability cannot be predicated upon a *respondeat superior* theory. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a viable cause of action pursuant to § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). In this case, the plaintiff does not allege that Dr. Kentrell Liddell had any personal involvement or was causally connected to the plaintiff's allegations. As such, Shorty's claims against Dr. Liddell shall be dismissed for failure to state a constitutional question.

## Negligence

Finally, Shorty alleges that on one occasion a nurse who dispenses medications failed to provide all of the medication prescribed to him. Especially considering the many times the plaintiff has been treated for his symptoms, a single instance of failure to provide all medications states, at most, a claim of negligence. Negligent conduct by prison officials does not, however, rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). For this reason, Shorty's claim of denial of medical care against the nurse who dispenses his medication shall be dismissed for failure to state a constitutional claim.

In sum, the plaintiff's motion for judgment on the pleadings shall be denied, and the motion by defendant Dr. Lehman for summary judgment shall be granted. In addition, the plaintiff's claims against Dr. Liddell shall be dismissed for failure to state a claim upon which

relief could be granted, as shall his claims against the nurse who dispenses medication to him.  A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 1st day of December, 2008.

/s/ MICHAEL P. MILLS
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**